IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JOSEPH RUSSANO and
JAMES MCCORMICK,

      Plaintiffs,

                                    CASE NO.: 14-cv-14937
      v.                             HON. VICTORIA A. ROBERTS


PREMIER AERIAL AND FLEET INSPECTIONS,
LLC, and JEFFREY LAWRENCE,

      Defendants.

---

**ORDER:**
**DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT (ECF No. 16)**

---

### I.   INTRODUCTION

Joseph Russano and James McCormick ("Russano" and "McCormick") sue

Premier Aerial and Fleet Inspections, LLC, and Jeffrey Lawrence ("Premier" and

"Lawrence"). Plaintiffs sue Lawrence as an individual and seek to hold him jointly and

severally liable. This action arises out of alleged timekeeping and overtime violations of

the Fair Labor Standards Act ("FLSA"). 29 U.S.C. § 201, *et seq.* Before the Court is

Defendants' Joint Motion for Summary Judgment (ECF No. 16). Oral argument was

heard on Tuesday, May 17, 2016.

The Court **DENIES** Defendants' Motion.

### II.   BACKGROUND

Russano and McCormick worked for Premier, a business that provides repair,

inspection, and maintenance services to companies that operate heavy machinery.

1

Jeffrey Lawrence is the president and day-to-day manager of Premier. Russano was employed by Premier as a mechanic from early 2009 until February 2014. McCormick was employed by Premier as a mechanic from February 2013 until February 2014. While working, Russano and McCormick were often required to travel to different clients throughout Michigan, Indiana, and Ohio. At the beginning of each shift, they picked-up and used Premier service trucks to travel to repair jobs. At the end of shifts, they dropped the service trucks off at the company's Brighton facility. Premier says Russano and McCormick sometimes took the trucks home in lieu of returning them to Brighton. Russano and McCormick counter and say this only happened if doing so benefitted Premier.

Premier paid Russano $20.00 and McCormick $18.00 per hour for time spent providing repair, inspection, and maintenance services ("work time"). The company paid Russano $14.00 and McCormick $13.00 per hour for time spent traveling to and from client sites ("drive time").

Russano and McCormick say they worked an average of 55 hours per week throughout their employment with Premier. Premier says they never worked over 40 hours per week. Russano and McCormick say Premier is required to compensate them "time and a half" for hours worked in excess of 40 hours per week. They say Premier did not compensate them for overtime worked and arbitrarily deducted approximately five hours per week from their "drive time."

### III.   STANDARD OF REVIEW

Summary judgment is proper when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of

2

law." FED. R. CIV. P. 56(a). A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The essential inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251-52.

The movant has the initial burden to demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The burden then shifts to the nonmovant, who "must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 256 (discussing FED. R. CIV. P. 56(e)). "[T]he court must view the evidence in the light most favorable to the non-moving party, drawing all reasonable inferences in that party's favor." *Sagan v. United States*, 342 F.3d 493, 497 (6th Cir. 2003) (*citing Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

Both parties must support their assertions "that a fact cannot be or is genuinely disputed" by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials." FED. R. CIV. P. 56(c)(1)(A). Alternatively, either party may carry its burden by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." FED. R. CIV. P. 56(c)(1)(B).

It is not enough for the nonmovant to "simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586. Rather, the

3

nonmovant must sufficiently allege a fact that, if proven, "would have [the] effect of establishing or refuting one of the essential elements of a cause of action or defense asserted by the parties . . . " *Midwest Media Prop., L.L.C. v. Symmes Twp., Ohio*, 503 F.3d 456, 469 (6th Cir. 2007) (*quoting Kendall v. Hoover Co.*, 751 F.2d 171, 174 (6th Cir. 1984)). If the nonmoving party does not respond with specific facts showing a genuine issue for trial, Summary Judgment is appropriate. *Emmons v. McLaughlin*, 874 F.2d 351, 353 (6th Cir. 1989).

## IV.   ANALYSIS

### A.   FLSA Legal Framework

The FLSA typically requires an employer to compensate employees for all the time that they work on the employer's behalf. *See Smith v. Aztec Well Servicing Co.*, 462 F.3d 1274, 1285 (10th Cir. 2006). The FLSA does not define work, *see Smith*, 462 F.3d at 1285, but the Supreme Court defined the term broadly as "physical or mental exertion controlled or required by the employer and pursued necessarily and primarily for the benefit of the employer and his business," *Tenn. Coal, Iron & R. Co. v. Muscoda Local N. 123*, 321 U.S. 590, 598 (1944) *superseded by statute on other grounds,* Portal–to–Portal Act of 1947, Pub. L. No. 104–188, 110 Stat.1928.  *See, Integrity Staffing Sols., Inc. v. Busk*, 135 S. Ct. 513, 519 (2014).

A common dispute under the FLSA, as is here, is determining when the work day begins and ends. Congress attempted to address this problem with § 4(a) of the Portal–to–Portal Act of 1947, which exempted employers from liability for certain categories of activities: (1) walking or travel time to and from the employee's "actual place of performance of the principal activity or activities which [the] employee is employed to

4

perform;" or (2) "activities which are preliminary to or postliminary to principal activities." 29 U.S.C. § 254(a). The Act still, however, leaves what is encompassed by the term "principal activity" open to dispute.

The Supreme Court held that "activities performed either before or after the regular work shift, on or off the production line, are compensable ... if those activities are an 'integral and indispensable' part of the principal activities for which covered employees are employed and are not specifically excluded by Section 4(a)(1)." *Steiner v. Mitchell*, 350 U.S. 247, 256 (1956). "[P]reliminary or postliminary activities are activities spent predominantly in the employees' own interests." *Graham v. City of Chicago*, 828 F. Supp. 576, 581 (N.D. Ill. 1993).

Activity that primarily benefits the employer is not preliminary or postliminary, regardless of when or where that activity takes place.  *Id.* at 582. The Supreme Court explained recently that, "any activity that is 'integral and indispensable' to a 'principal activity' is itself a principal activity." *IBP, Inc. v. Alvarez*, 546 U.S. 21, 37 (2005).

The "integral and indispensable" test is tied to the productive work that the employee is employed to perform but cannot be a mask to include everything as a principal activity. *See, e.g., IBP*, 546 U.S., at 42; *see also, Busk*, 135 S. Ct. at 519.

Once the work day starts, all activity is ordinarily compensable until the work day ends. Under the continuous-workday rule, "to the extent that activities engaged in by an employee occur after the employee commences to perform the first principal activity on a particular workday and before he ceases the performance of the last principal activity on a particular workday, the provisions of [§ 4 of the Portal–to–Portal Act] have no application." 29 C.F.R. § 790.6(a). For example, an activity such as walking, that occurs

5

between the first and last principal activities of the day is compensable even if that same activity might be excluded from compensable time under the Portal–to–Portal Act had it occurred before the first or after the last principal activity of the day. *See IBP*, 546 U.S. at 37.

The FLSA also provides that travel that is "all-in-a-days-work" is compensable. Time spent by an employee in travel as part of his principal activity, such as travel from job site to job site during the workday, must be counted as hours worked. *Chao v. Akron Insulation & Supply, Inc.*, No. 5:04-CV-0443, 2005 WL 1075067 at \*10 (N.D. Ohio May 5, 2005), *aff'd*, 184 F. App'x. 508 (6th Cir. 2006). "Where an employee is required to report at a meeting place to receive instructions or to perform other work there, or to pick up and to carry tools, the travel from the designated place to the work place is part of the day's work, and must be counted as hours worked regardless of contract, custom, or practice." 29 C.F.R. § 785.38. Application of the "all-in-a-days-work rule" depends on whether the activities conducted prior to travel were "integral and indispensable" to their principal activities. *See Smith v. Aztec Well*, 462 F.3d at 1289.

Due to the difficulty of fixing a definitive standard of what employee activities are "principal" and "integral and indispensable" to those principal activities, each case involving compensation for travel time must be decided on its own particular facts. *D A & S Oil Well Serv., Inc. v. Mitchell*, 262 F.2d 552, 554-55 (10th Cir. 1958).

As noted in *Smith v. Aztec Well*, if the employees' first principal activity took place at the meeting place before traveling to the worksite, and their last principal activity took place at the meeting place after returning from the worksite, then, under IBP, their travel time would be included within their workday. *Smith v. Aztec Well*, 462

6

F.3d at 1289. The Sixth Circuit has held that employees' pre- and post-travel activities were "integral and indispensable" to their principal activities where there was evidence that they received instructions at the meeting place, and were regularly required to pick-up or drop-off essential equipment or paperwork before and after traveling. *Hodgson v. Am. Concrete Constr. Co.*, 471 F.2d 1183, 1185-85 (6th Cir. 1973); *Chao v. Akron Insulation & Supply, Inc.*, 2005 WL 1075067 at *8, aff'd, 184 F. App'x. 508 (6th Cir. 2006).

**B.     A Factual Dispute Exists if "Drive Time" is Compensable**

Russano and McCormick say Premier arbitrarily deducted approximately 5 hours of "drive time" from their paychecks each pay period. Premier says employees "drive time" is non-principal activity that was preliminary and postliminary to the workday. Russano and McCormick argue that their "drive time" is compensable under the FLSA because driving is an "integral and indispensable" part of their principal activities; that their "drive time" is compensable under the "continuous workday" rule; and that the FLSA overtime protections apply to their "drive time."

Premier argues "drive time" is carved out as an exception to the FLSA by the Portal-to-Portal Act and is non-compensable time that does not factor into an employer's overtime calculations. To substantiate these positions, Premier solely cites to statutory language contained within the FLSA and the Portal-to-Portal Act. Defendants fail to cite a single binding U.S. Supreme Court, Sixth Circuit, or Eastern District of Michigan case to support their statutory interpretations. Without proper briefing by Premier, this Court is left to its own research and authority provided by Russano and McCormick.

Federal courts across the country have found that "drive time" can be compensable and have outlined when it may be appropriate to compensate employees.

In *Graham v. City of Chicago*, the District Court found that police canine handlers were due back pay because the dogs were akin to specialized tools, and transporting them in their car benefitted the City of Chicago:

> [T]hese activities are 'within the range of principal activities covered by the act and [are] performed at the behest and for the benefit of the employer.' (citation omitted). Certainly, if the City provided a central kennel for the dogs, the time spent picking up the dogs at that kennel and transporting them to work would be compensable even though it would be 'riding' to work. The City may not escape liability by requiring the officers to board the dogs at home.

*Graham*, 828 F. Supp. at 582.

In *Sec'y of Labor, U.S. Dep't of Labor v. E. R. Field, Inc.*, the First Circuit held that a truck driver who was required to carry tools and drive his employer's truck was allowed to recover back pay for "drive time," and the employer's contention that Portal-to-Portal Act exception applied was rejected. *Sec'y of Labor, U.S. Dep't of Labor v. E. R. Field, Inc.*, 495 F.2d 749, 750 (1st Cir. 1974) (holding that an electrician who drove his employer's truck loaded with tools and supplies from various jobsites after the eight-hour workday was entitled to withheld back pay due under the FLSA; the court explicitly rejected the employer's claim of exemption under the Portal-to-Portal Act, on the ground that the exemption does not cover 'any work of consequence performed for an employer' and on the finding that the trucks driven by the employee 'were primarily utilized as an integral and indispensable function of the defendant business'").

In *Chao*, the Sixth Circuit upheld a District Court's finding that employees must be compensated for "shop time" and "drive time." *Chao v. Akron Insulation & Supply*, 184 F. App'x. 508 (6th Cir. 2006). The shop time was compensable because employees

8

received assignments, assembled crews, and loaded trucks and these tasks were required by the employer and integral and indispensible to the employees' principal activity of installing insulation at offsite locations. *Id.* at 511. The Court also found drive time compensable, noting that a collective bargaining agreement cannot trump the overtime provisions of the FLSA. *Id.* at 512.

These cases illustrate situations where it would be appropriate for a court to find "drive time" compensable, and they support a liberal construction of the term "principal activity" or "activities." The FLSA provides expansive coverage and case law interpreting the Act limits the application of the Portal-to-Portal Act's exemptions.

As an illustration of a case in which drive time is not compensable, the Fifth Circuit held that employees' pre- and post-travel activities were not "integral and indispensable" to their principal activities where there was no evidence that they received necessary instructions at the meeting place, and there was no evidence that the company regularly required the plaintiffs to pick up or drop off essential equipment or paperwork while traveling. *Vega v. Gasper*, 36 F.3d 417, 425 (5th Cir. 1994).

Russano and McCormick testified that they were required to arrive in Brighton to pick-up the repair trucks (which contain specialized repair tools), receive instructions for the day, and upon completion of their work at various sites, return the trucks to Brighton where they checked-in with Lawrence. Lawrence testified that a small percentage of Premier's work is completed on-site in Brighton; nearly all work is done off-site. McCormick testified that if employees brought the trucks home, they did so for the benefit of Premier, since drive time could be reduced if the next morning's first job was closer to home than the company's shop in Brighton."

9

Since all reasonable inferences must be drawn in the light most favorable to Plaintiffs, the Court is not persuaded by Defendants' unsubstantiated statutory interpretation arguments that Russano's and McCormick's timekeeping claim under the FLSA should be dismissed. There is a genuine factual dispute if Russano's and McCormick's "drive time" is compensable under the FLSA.

**C.      A Factual Dispute Exists if Plaintiffs are Entitled to Overtime Compensation**

An employee who sues for unpaid overtime compensation under the FLSA bears the burden to prove that he performed work for which he was not properly compensated, "[t]he remedial nature of this statute and the great public policy which it embodies. . . mitigate against making that burden an impossible hurdle for the employee." *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 686–87 (1946), *superseded by statute on other grounds, Portal–to–Portal Act of 1947, Pub.L. No. 80–49, 61 Stat. 84.* The FLSA requires employers to maintain accurate records of the hours and wages of their employees. 29 U.S.C. § 211(c). In situations where an employer's records are inaccurate or inadequate, "an employee has carried out his burden ... if he produces sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference." *Mt. Clemens*, 328 U.S. at 687-88, (quoted and reaffirmed in *United States Dep't of Labor v. Cole Enters.*, Inc., 62 F.3d 775, 779 (6th Cir.1995)), *superseded by statute on other grounds* as stated in *Carter v. Panama Canal Co.*, 463 F.2d 1289, 1293 (D.C.Cir.1972). *See also*, *Herman v. Palo Grp. Foster Home, Inc.*, 183 F.3d 468, 472 (6th Cir.1999). "As courts have found, a plaintiff can meet this burden by relying on recollection alone." *Berrios v. Nicholas Zito Racing Stable, Inc.*, 849 F.Supp.2d 372, 380 (E.D.N.Y. 2012) (citations omitted).

10

Furthermore, "[i]n meeting the burden under *Mt. Clemens*, . . . [plaintiff] need not present testimony from each underpaid employee; rather, it is well-established that . . . [plaintiff] may present the testimony of a representative sample of employees as part of his proof of the prima facie case under the FLSA." *Reich v. S. New England Telecomms. Corp.*, 121 F.3d 58, 67 (2d Cir. 1997). "The burden then shifts to the employer to come forward with evidence of the precise amount of work performed or with evidence to negate the reasonableness of the inference to be drawn from the employee's evidence. If the employer fails to produce such evidence, the court may then award damages to the employee, even though the result be only approximate." *Mt. Clemens Pottery*, 328 U.S. at 687–88.

Russano and McCormick produced evidence showing that during some of the weeks of their employment with Premier, they worked more than forty hours in a single work week. Premier has not provided the Court with precise evidence of Plaintiffs' work hours. The time-records produced are vexingly difficult to discern at best and illegible at worst. Premier did not maintain and did not provide the Court with accurate time records. On the other hand, Russano and McCormick produce sufficient evidence to show overtime work by was completed reasonable inference.  They have thus shifted the *Mt. Clemens* burden to Premier.

Premier fails to sufficiently negate the reasonableness of the inference to be drawn from Plaintiffs' proffered evidence. Premier restates its unsubstantiated reading of the FLSA and Portal-to-Portal Act to justify why Russano and McCormick should not be paid overtime and asserts that the Plaintiffs' benefitted from the company's pay calculations despite the fact that Premier did not pay them overtime. The Sixth Circuit

11

reaffirmed a District Court's decision that custom and practice does not trump the FLSA. *Chao v. Akron Insulation & Supply, Inc.*, 2005 WL 1075067, at *10, *aff'd,* 184 F. App'x 508 (6th Cir. 2006).

Because Premier does not satisfy its burden under *Mt. Clemens*, Russano and McCormick's claim for overtime must survive Summary Judgment.  When an employer fails to meet its burden, the Court may award damages even if the amount is only approximate.  *Mt. Clemens Pottery*, 328 U.S. at 687–88.  That is because if the employee proves he was not properly compensated for work he performed, damages are certain; only the amount of damages is uncertain.  *Id.* at 688.

Plaintiffs create an issue of fact; case law supports that drive time can be compensable under certain circumstances.  The jury will need to decide if those circumstances are present here and, if so, the amount of overtime pay Plaintiffs are entitled to.

**D.    A Factual Dispute Exists If Lawrence Can Be Held Individually Liable for Back Pay**

Defendants argue that Lawrence cannot be held individually liable as an "employer" under 29 U.S.C. § 203(d).

The FLSA defines "employer" to include "any person acting directly or indirectly in the interest of an employer in relation to an employee...." 29 U.S.C. § 203(d). The FLSA envisions that there may be several simultaneous employers who are responsible for compliance with the FLSA. *Falk v. Brennan*, 414 U.S. 190, 195 (1973). "The remedial purposes of the FLSA require courts to define 'employer' more broadly than the term would be interpreted in traditional common law applications." *McLaughlin v. Seafood, Inc.,* 867 F.2d 875, 877 (5th Cir. 1989). In deciding whether a party is an

12

employer, "economic reality" controls rather than common law concepts of agency. *Goldberg v. Whitaker House Cooperative*, 366 U.S. 28, 33 (1961). Whether a party is an employer within the meaning of the FLSA is a legal determination. *Donovan v. Brandel*, 736 F.2d 1114, 1116 (6th Cir. 1984) ("[T]he determination of whether a particular factual setting gives rise to coverage under the FLSA is a matter of law."). "The overwhelming weight of authority is that a corporate officer with operational control of a business's covered enterprise is an employer along with the corporation, jointly and severally liable under the FLSA for unpaid wages." *Donovan v. Agnew*, 712 F.2d 1509, 1511 (1st Cir. 1983).

Lawrence is president of Premier. He and his wife are "50/50" co-owners of the business. In Lawrence's sworn deposition, he stated that he was in control of the day-to-day operations of the business, including determining employee wages. The record in this case reveals that Lawrence is heavily involved in the business operations of Premier, controls the business, and solely directs its employees. Defendants do not dispute these facts. Proffered evidence demonstrates that Premier functions for Lawrence's profit.

The Court solely analyzes Plaintiffs' personal liability claim for the purposes of Summary Judgment and is persuaded that the economic realities of this case suggest that a reasonable jury may find that Lawrence is an employer within the meaning of the FLSA. The personal liability claim will proceed, as a genuine factual dispute exists. It is best left for a jury to decide if Lawrence may be held personally liable for Premier's alleged failure to comply with the FLSA.

13

## V.  CONCLUSION

Premier and Lawrence's Joint Motion for Summary Judgment (ECF No. 16) is

**DENIED**. Russano's and McCormick's claims under the FLSA, as well as their personal

liability claim against Lawrence, may proceed.

**IT IS ORDERED**.

S/Victoria A. Roberts
Victoria A. Roberts
United States District Judge

Dated:  August 4, 2016

| The undersigned certifies that a copy of this document was served on the attorneys of record by electronic means or U.S. Mail on August 4, 2016. <br><br> s/Linda Vertriest <br> Deputy Clerk |
| --- |

14